### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT SAVANNAH,

## JANUARY TERM, 1855.

Present—JOSEPH H. LUMPKIN,
EBENEZER STARNES, } *Judges.*
HENRY L. BENNING,

---

No. 58.—MICHAEL SANDERS, plaintiff in error, *vs.* JOHN DA-
VISON, defendant.

[1.] By the laws of this State, the Inferior Courts of the respective counties
thereof have no power to issue land warrants, the original jurisdiction over
this subject being conferred, by the Act of 1789, *exclusively* upon a Land
Court, constituted of three or more Justices of the Peace.

Caveat, in Richmond Superior Court. Decided by Judge
HOLT.

This was a case of conflicting land warrants, issued under
the Head-right Acts, and covering the same land.

The older warrant had been issued to the plaintiff in error,
by three Justices of the Inferior Court, sitting as a Land Court,
and the younger one to the defendant in error, by four Justi-
ces of the Peace, sitting as a Land Court.

Upon a caveat filed by the defendant in error, the Court below held that the older warrant was void, because Justices of the Inferior Court are not authorized to sit as a Land Court.

And on this decision, error is assigned.

A. J. and T. W. MILLER, for plaintiff in error.

WALTON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Can the Inferior Courts of the respective counties of this State sit as a Land Court?

By the Act of February, 1783, (*Watkin's Dig.* 260,) opening a general land office in Georgia, *a majority* of the Justices belonging to each county, constituted a Land Court. By the Act of August of the same year, any *five* of these Justices, (one of them being an assistant Justice, as he is called,) composed a board for that purpose. (*Watkins*, 286.) And thus the law stood until 1789. By a supplemental Act to the several Land Laws passed that year, this power was given to *three* or *more* Justices of the *Peace*. (*Watkins*, 407.)

That there was no intervening Act between these, is apparent, not only from an examination of the Statute Book, but from other considerations. The compiler of the laws, in a marginal note to the original Act of February, 1783, refers to the modification of that Act by the subsequent Acts of August, 1783, and December, 1789. And in the note to the Act of August, 1783, he again refers to the following Act of 1789, as the final action of the Legislature upon this subject.

But this is not all which goes to prove that there was no intermediate legislation, regulating Land Courts. The Act of 1789, purports to be supplemental to the several Land Laws thertofore passed in this State, and enacts that three or more of the Justices of the Peace may use and exercise the powers given to four Justices and one assistant Justice, by the Act of August, 1783. Now this supplemental Act of 1789 was passed on the

Sanders *vs.* Davison.

same day with the general Judiciary Act of that year. By this latter Act, the Superior and the Inferior Courts, proper, were separated and established, and the jurisdiction of each defined. And the argument for the plaintiff in error is, that at this time, the power that had been before used and exercised by the Land Court, as organized under the previous Acts of February and December, 1783, was vested in the Inferior Courts, proper, and that it has been continued there ever since.

If this be so, is it not a little remarkable, or rather unaccountable, that the supplemental Act passed the same day, giving the powers of the Land Court to three or more Justices of the Peace, should make no reference, whatever, to the Inferior Courts just created, as having this power, when reference is made to the old Land Court of 1783, of which this supplemental Act purports to be, both in its title and upon its face, a modification? Why do the compilers of the laws, who were cotemporary with this legislation, and who were not only lawyers, but prominent actors upon the public stage at that period, make no allusion to this transfer of jurisdiction in 1789, to the Inferior Courts? Why does the Legislature, itself, in the supplemental Act, omit any mention of it?

There is another important view of this question, whether we look to the Judiciary Acts before 1797, or to the Act of that year which repeals all the preceding Acts, which regulated the Judiciary Department of the Government, or the Act of 1799, which repeals all of the Acts of 1797, except from the 67th section and onward, relating exclusively to Justices of the Peace, we shall search in vain for the grant of jurisdiction claimed for the Inferior Courts upon the matter in controversy.

I say it respectfully—it is nevertheless true—that but for the fact that *five* or more Justices, one of them being an assistant Justice, constituted the Land Court, under the Act of August, 1783, and *five* compose the bench of the Inferior Court, proper, as at present established, the jurisdiction exercised by the former, never, I apprehend, would have been claimed or used by the latter tribunal.

Again, in 1842, doubts arose as to who was to officiate as

*Clerk* of the Land Court. No such doubt could have been entertained had the Inferior Court constituted the Land Court *exclusively*. Of course, in that case, their Clerk would have served; yet, we find the General Assembly of that year declaring that the Clerk of the Inferior Court should be the Clerk of "the Land Court of the county"—not the Land *Courts*, as of many or more than one; but the definite article is used—*the* Land Court. (*New Digest*, 679.) Had the jurisdiction been concurrent even, the phraseology would have been "the Land Court held by the Justices of the Peace." But the Legislature understood there was but one Land Court; and such is our understanding.

And while we do not doubt, for a moment, either the experience or the information of our learned brother, as to the practice in the Middle Circuit or elsewhere, we are constrained to say that it is without authority of law.

Since delivering this opinion, I have learned that a practice similar to that which has obtained in the Middle Circuit, existed formerly in the Western Circuit and in one of the counties of the Northern Circuit, but that in both it had been overruled upon solemn argument. We feel quite certain the practice never did prevail, generally, over the State; otherwise, we should be reluctant to overturn it, however contrary to our construction of the law. We do not aspire to the reputation of even *Judicial reformers*—even, much less, *revolutionists*. We are content to administer, in good faith, not only the laws as we find them written, but whenever we can, as they were interpreted by our forefathers of old, of ever blessed memory.

We would not be understood as holding that a grant issued upon a warrant emanating from the Inferior Court would, for that reason, alone, be invalid. Our judgment is, that it is incompetent for that body of Magistrates to issue such a warrant; and that it should be quashed, provided proceedings are instituted in due time, as in the present instance, to arrest it.

Judgment affirmed.